J-S19022-25

2025 PA Super 246

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
CODY KAVON REED   :
  :
  Appellant   :   No. 2552 EDA 2024

Appeal from the Judgment of Sentence Entered August 19, 2024
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0003168-2023

BEFORE: PANELLA, P.J.E., STABILE, J., and BECK, J.

OPINION BY STABILE, J.:         **FILED OCTOBER 30, 2025**

Appellant, Cody Kavon Reed, appeals from his judgment of sentence of life imprisonment for first-degree murder, criminal conspiracy, robbery, possession of an instrument of crime with intent, and flight to avoid apprehension or punishment.[1] We affirm.

The trial court's detailed opinion demonstrates the painstaking way in which the police assembled their case against Appellant:

> On March 3, 2023, around 9:00 a.m., Daquan Tucker's body was discovered by a passerby, down a steep embankment, next to the Schuylkill River Trail. Officer Anthony DiNolfi of the West Norriton Township Police Department responded to the scene at 185 Schuylkill River Trail a few minutes later.
>
> Detective David Schanes of the Montgomery County Detective Bureau was able to identify the victim, at the scene, using a portable fingerprint reader since no identifying information was found. The detective collected two fired cartridge casings, both

_____

[1] 18 Pa.C.S.A. §§ 2501, 903, 907, and 5126, respectively.

.40 caliber. He later recovered a third projectile from the autopsy. All three fired cartridge casings were fired from the same firearm.

Dr. Khalil Wardak performed the autopsy and determined that the cause of death was multiple gunshot wounds to the head. During the course of the investigation, Riley Weems, the victim's girlfriend, spoke to police and gave police critical information. Ms. Weems explained that on March 2, 2023, the victim left their house around 6:45 p.m. The victim shared his location with her, through a shared "live location" on the Find my iPhone application. At 8:57 p.m., Ms. Weems took a screenshot of his location, which showed that the victim was in the woods, since she thought that was strange. She took another screenshot of his location around 9:00 p.m. Ms. Weems was worried and called him at 9:02 p.m.; the victim answered. He sounded happy, as if nothing was wrong. She later tried calling him several other times, but he never answered. At 10:06 p.m., Ms. Weems took a screenshot of the victim's cell phone location, which showed that his phone was around 1000 West Airy Street. The victim's cell phone location no longer would update.

Although Ms. Weems testified that she did not remember certain aspects of her March 3, 2023 statement to police, the recorded statement showed that on March 2, 2023, before meeting up, the victim was on a FaceTime call with Appellant. Ms. Weems gave Appellant her address, so he could send an Uber for the victim.

Detective John Wittenberger of the Montgomery County Detective Bureau gathered about 24 sources of video surveillance and made a compilation video. In pertinent part, video from the morning of March 2, 2023, showed Johnson, with blue Puma hooded sweatshirt with the hood up, acid wash jeans and holding his phone. Appellant was wearing jeans and carrying his cell phone. The two men walked towards Appellant's apartment and entered. Around 7:11 p.m. that night, the victim arrived in the vicinity of Appellant's apartment in an Uber. The Uber had been ordered from an account associated with Hailey Covelens, Appellant's girlfriend. The victim walked to Appellant's apartment.

Around 8:32 p.m., video surveillance showed that the victim, Appellant, and Johnson, exited Appellant's apartment building and walked westbound. Additional surveillance videos showed the three men continue to walk south on Chain Street in the direction of the Schuylkill River Trail. The entire walk was about 1.4 miles.

The men went out of view about a block before the trail access point. There was no surveillance video on the trail.

Around 9:36 p.m., surveillance video picked up two subjects walking away from the trail and on a path of travel back to Norristown. On the way back to Appellant's residence, video at a 7-Eleven showed Appellant and Johnson around the 1500 block of West Main Street at about 9:38 p.m. They arrived back [at] Appellant's apartment around 10:22 p.m. At 10:54 p.m., Brianna Radley's vehicle pulled up to Appellant's residence, the two men exited the residence, and got into the car. The vehicle left the area.

Detective Heather Long reviewed call detail records for cell phones belonging to Appellant, Johnson, the victim, and Ms. Radley. The detective reviewed the download of Ms. Weems' phone. Additionally, she corroborated the phone detail records with the clips of surveillance video testified to by Detective Wittenberger. On the morning of the murder around 10:59 a.m., cell site data showed that Appellant and Johnson's phones were traveling together in the vicinity of Appellant's apartment building. The surveillance video from 11:03 a.m. showed that Appellant was wearing a grey jacket, grey sweatshirt, and gray baseball cap. Johnson was wearing a bright blue Puma sweatshirt and lighter blue, acid wash jean, and black sneakers. Handset location of Johnson's phone at that same time showed his cell phone in the vicinity of Appellant's residence from 11:03 a.m. until 8:06 p.m. Cell site data also put Johnson in the vicinity of Appellant's residence during this same time period. Surveillance video supports the fact that they remained there during this time.

From about 8:38 p.m. until 10:15 pm. [on March 2nd], during the critical time period, cell site data showed Appellant's phone faced the site and sector of his residence. This was consistent with handset location. Johnson's cell site data showed that during this same time, his cell site side and sector also faced Appellant's residence. However, the victim's handset records showed his phone left the vicinity of Appellant's residence around 8:32 p.m., which was corroborated by the video which showed the victim along with Appellant and Johnson, leaving Appellant's apartment. In fact, the victim's handset records match the path of travel of the three men in the surveillance video. The men were last seen on the video around 8:40, about 250 to 300 yards from the Schuylkill River Trail.

The victim's handset records from 8:40 p.m. to 9:00 p.m. show movement of his cell phone and the handset location at around that time. At 9:09 p.m., the victim's cell phone location converged with the cell location from the Find My iPhone application and the location of the victim's body the next morning.

By 9:20 p.m., the victim's cell phone began to travel away from where his body was found. This was consistent with video surveillance of a path of travel traveled by two figures. More specifically, at 9:37 p.m., two subjects, one wearing light over dark which was consistent to what Appellant had been wearing earlier; and dark over light clothing, consistent with what Johnson had been seen in in earlier surveillance, walked in a path consistent with the victim's handset location. At 9:40 p.m. the victim's cell phone traveled to West Main Street. This is consistent with surveillance video that showed two subjects walking in the direction of the 7-Eleven. Screenshots at the 7-Eleven at 9:52 p.m. showed Appellant and Johnson. After 10:18 p.m., the victim's cell phone stopped communicating with the network, and was last located in the vicinity of Appellant's apartment.

Handset records indicated that Appellant's and Johnson's phones were at Appellant's residence during the critical time period and there was no user-initiated activity during this time period. However, after video showed Appellant and Johnson arrive back [at] Appellant's residence, there was user-initiated activity on their phones.

Ms. Radley's cell phone arrived in the vicinity of Appellant's residence around 10:58 p.m. Around that time, video showed that the two subjects emerged from Appellant's residence and entered her vehicle. Appellant was carrying a white bag. Thereafter, cell phone records showed the travel of all three phones away from Appellant's residence. There were no further records for Appellant's phone after March 4th. Ms. Radley's phone and Johnson's phone continued to travel together until March 6th, which is the last cell site information for Johnson's phone. By March 7th, cell site data showed Ms. Radley's phone to be in the vicinity of 826 Monroe Street, Stroudsburg area. After 12:44 p.m. her phone was no longer connected to the network. This was in close proximity in time or right after the police contacted Ms.

Radley's parents.[2]  Between March 9th and April 6th there were several Airbnb rentals all reserved from an account associated with Ms. Radley.  The last rental was on March 31, 2023, for seven nights, at 11 North Rhode Island Avenue, Atlantic City.  On April 6, 2023, over 20 SWAT officers responded to that location and Appellant and Johnson were taken into custody.

Pa.R.A.P. 1925 Opinion, 12/13/24, at 2-8 (cleaned up; citations omitted).

Appellant and Johnson were tried together, and a jury found Appellant and Johnson guilty of the charges referenced above.  On August 19, 2024, the court entered sentence against Appellant.  Appellant filed timely post-sentence motions, which the court denied, and a timely appeal to this Court.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal:

Did the lower court err by failing to grant Appellant's Motion for Judgment of Acquittal because the Commonwealth's evidence was insufficient to sustain convictions on the charges of Conspiracy to Commit First Degree Murder, First Degree Murder, Robbery, Flight to Avoid Apprehension and Possession of an Instrument of Crime[?]

Did the lower court err and abuse its discretion by not permitting defense counsel to cross-examine a witness about the victim's intent to meet with a third person on the night of the murder[?]

In his first argument, Appellant contends that the evidence was insufficient to sustain his convictions.  We disagree.  Appellant and Johnson lured the victim, Daquan Tucker, into Norristown, where they brought him to the Schuylkill River Trail and shot him.  After the killing, they took the victim's

_____

[2] The police also told Appellant's and Johnson's girlfriends that arrest warrants had been issued for Appellant and Johnson.  N.T., 6/4/24, at 119-20.

- 5 -

cell phone and fled. This evidence, construed in the light most favorable to the Commonwealth, defeats Appellant's sufficiency challenge.

When the defendant challenges the sufficiency of the evidence, our standard of review is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019).

First-degree murder is a criminal homicide committed by an intentional killing. 18 Pa.C.S.A. § 2502(a). To sustain a first-degree murder conviction, the Commonwealth must establish that: (1) a human being was unlawfully killed; (2) the defendant did the killing; and (3) the killing was willful, deliberate, and premeditated. *Id.* at § 2502(a), (d); *Commonwealth v. Hicks*, 156 A.3d 1114, 1123-24 (Pa. 2017). When there is no direct evidence of intent to kill, the factfinder may infer intent from the act itself and all surrounding circumstances. *Commonwealth v. Simmons*, 662 A.2d 621,

629 (Pa. 2005). Use of a deadly weapon on a vital part of the body is a clear indicator of intent to kill. *Commonwealth v. Stokes*, 78 A.3d 644, 650 (Pa. Super. 2013) ("[s]pecific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another").

The defendant is guilty of conspiracy to commit first degree murder if he: (1) intends to commit or aid in the commission of the criminal act; (2) enters into an agreement with another to engage in the crime; and (3) the defendant or another co-conspirator commits an overt act in furtherance of the agreed upon crime. *Commonwealth v. Le*, 208 A.3d 960, 969 (Pa. 2019); *see also* 18 Pa.C.S.A. § 903(a). "The essence of a criminal conspiracy … is the agreement made between the co-conspirators." *Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004). A conviction for conspiracy requires proof of the existence of a shared criminal intent. *Le*, 208 A.3d at 969. For first-degree murder, a conspirator must also possess the specific intent to kill. *Commonwealth v. Rios*, 721 A.2d 1049, 1053 (Pa. 1998). Whether a person had the same intent to kill as their co-conspirator may be "inferred from words, conduct, the attendant circumstances including the actions taken after the killing and all reasonable inferences that follow from them." *Id.*

The nature of conspiracy is that there is often no direct evidence of the defendant's criminal intent or the conspiratorial agreement. *Murphy*, 844 A.2d at 1238. Thus, "[a]n agreement sufficient to establish a conspiracy can

be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Commonwealth v. Geiger*, 944 A.2d 85, 90 (Pa. Super. 2008). Such conduct or circumstances may may create "a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. Jordan*, 212 A.3d 91, 97 (Pa. Super. 2019). All co-conspirators can be convicted of first-degree murder, regardless of who inflicted the fatal wound. *Le*, 208 A.3d at 969.

Finally, a person may also be liable for crimes of another if he served as an accomplice. *Id.* (applying accomplice liability to first-degree murder). A person acts as an accomplice when he, "with the intent of promoting or facilitating the commission of an offense…solicits such other person to commit it, or aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S.A. § 306(c)(1). The amount of aid necessary is minimal. Indeed, the "least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice." *Commonwealth v. Mitchell*, 135 A.3d 1097, 1102 (Pa. Super. 2016). "No agreement is needed, only aid." *Id.* As with conspiracy, an accomplice to first-degree murder must also possess the specific intent to kill. *Le*, 208 A.3d at 969. In turn, such intent may be inferred from conduct and

circumstances. An accomplice also is culpable even if he did not inflict the fatal wound. *Id.*

Here, the Commonwealth presented ample circumstantial evidence that Appellant and Johnson entered in a criminal conspiracy with a single goal: to kill the victim. They executed their conspiracy on March 2, 2023, when they accompanied the victim into the river trail and shot him three times in the head. The events leading up to the murder began with Appellant arranging for the victim to come to Norristown. Before then, the victim had planned to spend the night with his girlfriend, Weems. Video later depicted Appellant, Johnson and the victim walking together through Norristown. The last video of the three showed them walking in the direction of the river trail, about 250 yards away from its entrance. Just under an hour later, Appellant and Johnson were on video walking north up Schuylkill Avenue, away from the trail, but without the victim. This street was further west down the trail from where the victim entered and from the location of his body. In other words, the victim's body was found between the entry and exit points.

The evidence established that the victim died shortly after entering the trail. Specifically, he died shortly after 9:10 p.m., after he stopped responding to Weem's calls and text messages. Weems took a screenshot of the victim's location while he was on the trail. His body was later found near this spot, but without his phone. The victim's phone, however, continued to travel on the same path as Appellant and Johnson, first west along the trail, then north

up by Schuylkill Avenue, then back east in the direction of Appellant's apartment. Weems took an additional screenshot that showed the phone's location at 1000 W. Airy Avenue. Video footage captured Appellant and Johnson walking across the street at that location at the exact same time. The phone continued to follow Appellant's path until it was disconnected from the network.

Furthermore, Appellant and Johnson fled from Norristown immediately after the murder, indicating their knowledge of the killing and consciousness of guilt. *See Commonwealth v. Johnson*, 838 A.2d 663, 681 (Pa. 2003) (defendant's flight indicates knowledge of killing and establishes consciousness of guilt); *Commonwealth v. Housman*, 986 A.2d 822, 831 (Pa. 2009) (flight is circumstantial evidence of specific intent to kill). Upon returning to Appellant's apartment, Johnson immediately arranged for his girlfriend to come to Norristown. When she arrived, Appellant loaded a large bag into the car and the three immediately left. Appellant and Johnson then spent the next month moving between different Airbnb's until they were apprehended in Atlantic City.

This evidence, viewed in the light most favorable to the Commonwealth, established Appellant's guilt for first-degree murder beyond a reasonable doubt. A jury could reasonably infer that Appellant and Johnson accompanied the victim into the river trail based on their location and movement. On the trail, they shot him three times in the head, took his phone and fled. Whether

Appellant fired the fatal shot is irrelevant; he is still guilty either as Johnson's accomplice or co-conspirator.

The same evidence establishes the existence of a conspiracy to kill the victim. Appellant and Johnson were associates who left their cell phones at Appellant's apartment before meeting with the victim, left the river trail together after shooting the victim, went back to Appellant's apartment, fled Norristown together, and moved together to different locations for the next month until their arrest in New Jersey. *See Commonwealth v. Marquez*, 980 A.2d 145, 150 (Pa. Super. 2009) (noting "[f]light [is] the logical conclusion of [a] criminal confederation").

Appellant argues that the Commonwealth did not present physical evidence that he entered the trail, possessed a gun, or provided a motive. Appellant's brief at 11. He ignores that the Commonwealth could and did meet its burden with circumstantial evidence alone. *Smith*, 206 A.3d at 557. As discussed above, the evidence shows that Appellant walked into the river trail with the victim and then left the trail without him. The victim's body never left the trail, but his phone traveled along the same path as Appellant and Johnson. The victim died from three shots to the head, establishing use and possession of a firearm. Further, the lack of motive is irrelevant, for "[i]t is well established that the Commonwealth is not required, as a matter of law, to prove the accused's motive even where the offense charged is murder in

the first degree." ***Commonwealth v. Briggs***, 12 A.3d 291, 340 n. 44 (Pa. 2011).

Next, citing ***Commonwealth v. Phillips,*** 129 A.3d 513 (Pa. Super. 2013), Appellant argues that there was insufficient evidence to support his conviction for flight to avoid apprehension. Specifically, he claims that he could not be convicted of this crime because he fled before law enforcement filed charges.

The Crimes Code defines the offense of flight to avoid apprehension, trial or punishment as follows:

> **A person who willfully conceals himself** or moves or travels within or outside this Commonwealth **with the intent to avoid apprehension,** trial or punishment **commits a felony** of the third degree **when the crime which he has been charged with** or has been convicted of **is a felony** and commits a misdemeanor of the second degree when the crime which he has been charged with or has been convicted of is a misdemeanor.

18 Pa.C.S.A. § 5126. (Emphasis added). Pertinently, the plain language of this statute makes it an offense if a person conceals himself with the intent to avoid apprehension when the crime he has been charged with is a felony or misdemeanor. In other words, Section 5126 requires a specific intent to avoid apprehension, *i.e.*, arrest, after acquiring knowledge that charges have been filed. ***See Commonwealth v. Steffy,*** 36 A.3d 1109 (Pa. Super. 2012) (appellant was not avoiding apprehension for speeding ticket but was eluding police to avoid apprehension and punishment based on his knowledge that he had an outstanding bench warrant for his arrest). It therefore is incumbent

- 12 -

upon the Commonwealth to prove a defendant was aware of pending charges while fleeing. This of course may be shown circumstantially. *Smith, supra.*

In this case, the trial court ably described the circumstantial evidence demonstrating that Appellant fled to avoid apprehension while knowing that charges had been filed against him:

> Detective Wittenberger testified that on March 8, 2023, arrest warrants were issued for Appellant and Johnson. (N.T., Trial by Jury-Day 2, 6/4/24, 119). In an attempt to find them, the detective spoke to their respective girlfriends to find out their whereabouts. *Id.* He spoke to Briana Radley [Johnson's girlfriend] on March 8th, and 22nd. *Id.* at 120. He spoke to Hailey Covelens [Appellant's girlfriend] on March 15th. *Id.* at 120. They did not provide the detective with any information. *Id.*
>
> In addition, Ms. Radley helped Appellant and Johnson initially leave Norristown and head upstate in Pennsylvania. (N.T., Trial by Jury-Day 3, 6/5/24, 124-125). Ms. Radley's phone, Appellant's phone, and Johnson's phone traveled together from the time of the murder through March 4th, when there were no longer records for Appellant's phone. *Id.* at 132. Ms. Radley's phone and Johnson's phone continued to travel together until March 6th, which is the last cell site information for Johnson's phone. *Id.* at 134-136. By March 7th, cell site data showed Ms. Radley's phone to be in the vicinity of 826 Monroe Street, Stroudsburg area. After 12:44 p.m., her phone was no longer connected to the network. This was in close proximity in time or right after the police contacted Ms. Radley's parents. *Id.* Between March 9th and April 6th there were several Airbnb rentals all reserved from an account associated with Ms. Radley. *Id.* at 137-138, 140. The last rental was on March 31, 2023, for seven nights, at 11 North Rhode Island Avenue, Atlantic City, where Appellant and Johnson were ultimately apprehended. *Id.* at 138.
>
> ….Appellant and Johnson continued to abscond from law enforcement after the arrest warrants were issued and circumstantial evidence showed they were aware that the warrants were issued and law enforcement was attempting to locate them.

Opinion at 17-18. We conclude that this evidence was sufficient for a jury to infer and find that Appellant knew that charges had been filed against him, causing him to continue to conceal himself to avoid apprehension. This was especially so given the circumstantial evidence of the apparent complicity between Appellant, Johnson and their girlfriends before and while continuing to flee. Although Appellant argues that he continued fleeing because he knew people thought he had killed the victim, the jury was free to reject this theory and accept the Commonwealth's view of the evidence. **Watkins**, 843 A.2d at 1211 (factfinder is free to accept all, some, or none of the evidence).

We further find that the circumstantial evidence supporting Appellant's conviction for flight to avoid apprehension, viewed in a light most favorable to the Commonwealth, is supported by our Supreme Court's decision in **Johnson**. The defendant in that case contended, *inter alia*, that the trial court's instruction on concealing/fleeing was improper because there was no direct testimony showing that he knew that he was sought after by the police and the evidence revealed that he resided in New York near the time of the shooting. The Court, opining on the evidence, stated,

> A defendant's knowledge may be inferred from the circumstances attendant his flight. **See Commonwealth v. Lester**, 554 Pa. 644, 658, 722 A.2d 997, 1003 (1998) (citing **Commonwealth v. Rios**, 546 Pa. 271, 291, 684 A.2d 1025, 1035 (1996)); **see also** [**Commonwealth v.**] **Tinsley**, 465 Pa. [329,] 333, 350 A.2d [791,] 793 [1976] (concluding that such an inference was justified where the evidence revealed that the defendant abandoned his normal pattern of living without explanation and could not be located at his residence or place of employment or through contacts to his relatives). Here, there was evidence that Johnson

- 14 -

disrupted his normal pattern of living following Combs' killing. Further, the police conducted an extensive search spanning Pennsylvania and New York, but were unable to locate Johnson for over one and one-half years when he was finally taken into custody by the FBI in New York. **Johnson's knowledge that he was wanted could be inferred** from Detective Dietrich's testimony that he informed Johnson's friends and family in New York that he held a warrant for Johnson's arrest. Additionally, the difficulty in locating Appellant is consistent with Ramsey's testimony that, after Combs' murder, she was told by Izod, who was a member of Johnson's drug-trafficking group, "It's too hot and we [are] laying low." The court therefore properly determined that the Commonwealth presented sufficient evidence to warrant the concealment/flight charge.

*Id.*, 838 A.2d at 681 (emphasis added). As in *Johnson*, (1) Appellant abandoned his normal pattern of living by absconding from Pennsylvania, (2) he did so for approximately one month after his crimes were committed, and (3) Johnson's and Appellant's girlfriends and Radley's parents were informed of the outstanding arrest warrants for them. These facts, together with the use and disconnection of phones and the apparent complicity with their girlfriends, support the inference of Appellant's knowledge of the charges against him.

Appellant's reliance upon *Phillips* is unavailing. *Phillips* only made clear that the plain language of Section 5126 requires that a person *has been charged* with a crime before he may be found guilty of flight to avoid apprehension. *Id.*, 129 A.3d at 518. In that case, the defendant fled on foot after the car he was in crashed after a high-speed police chase. He was charged with and convicted of, *inter alia,* flight to avoid apprehension. On appeal, we concluded that since the Commonwealth did not prove that

defendant had been charged with a crime when he fled, insufficient evidence existed to find him guilty of that offense. We therefore reversed the defendant's judgment of sentence and discharged him on that count. ***Id.*** at 519.

This appeal does not present the same circumstances as in ***Phillips***. In ***Phillips***, the defendant was arrested immediately after a chase and *before* he was charged with flight to avoid apprehension. Instantly, while it is true Appellant fled immediately after committing the crimes of which he was convicted, unlike ***Phillips***, he continued to flee even after charges were filed against him to avoid apprehension. Under the plain language of Section 5126, Appellant could be found guilty of flight to avoid apprehension.

We acknowledge that there appears to be difference of opinion in this Court's unpublished memoranda as to whether Section 5126 requires the Commonwealth to prove that the defendant knows he has been charged with a felony or misdemeanor offense. ***Compare Commonwealth v. Baker,*** 2019 WL 7173300, *2 (Pa. Super. 2019) ("Section 5126 applies where the defendant flees knowing that a criminal charge is pending against him") ***with Commonwealth v. Bronson***, 2023 WL 2360866, *5 (Pa. Super. 2023) (Section 5126 does not require proof that defendant knew he had outstanding arrest warrant at time he fled from police). Our review of Section 5126 demonstrates that a defendant must be aware that charges have been filed against him to be found guilty of a Section 5126 offense. Had our legislature

intended to criminalize flight after committing a crime without knowledge that charges have been filed, it could have done so simply by making it a crime to avoid apprehension after committing a crime. Instead, Section 5126 imparts a specific intent to avoid apprehension (arrest) after charges have been filed, thus requiring a nexus between the intent to flee and the reason for fleeing. As discussed above, the detailed circumstantial evidence in this case demonstrates that Appellant was aware that charges were filed against him during his month-long flight following the murder.

Appellant seems to suggest that Section 5126 only applies when the defendant learns that charges have been filed before he flees. The plain language of Section 5126, however, demonstrates that it applies where the defendant learns about the charges before **or** after he flees. Appellant cites no relevant authority that Section 5126 excuses a defendant's flight when he learns about the charges after he flees. Nor can we fathom any rationale that supports such a defense.

Finally, Appellant does not offer any specific argument that there was insufficient evidence to support his convictions for robbery or possession of an instrument of a crime. There was sufficient evidence to sustain his convictions on both charges. The evidence establishes that Appellant and Johnson took Appellant's phone after the murder and later disposed of it around the time it was disconnected from the network. **See** 18 Pa.C.S.A. § 3701(a)(1)(i) (defining robbery as inflicting serious bodily injury in commission of a theft).

The use of a gun to kill the victim demonstrates Appellant's guilt for possession of an instrument of a crime. *See Commonwealth v. Santiago*, 980 A.2d 659, 662 (Pa. Super. 2009) (using loaded gun to kill satisfies elements of possession of an instrument of crime); *Commonwealth v. Gladden*, 665 A.2d 1201, 1208 (Pa. Super. 1995) (applying accomplice liability to possession of an instrument of a crime); 18 Pa.C.S.A. § 907(a).

For these reasons, Appellant's challenge to the sufficiency of the evidence fails.

In his second and final argument, Appellant contends that the trial court erred by excluding testimony that the victim intended to meet with another person on the night of the murder. We agree with the Commonwealth that Appellant waived this argument.

During trial, the trial court sustained the Commonwealth's hearsay objection when defendant's counsel asked the victim's girlfriend whether the victim told her that "he was meeting with E?" The Commonwealth objected on the basis of hearsay, and the court sustained the objection. Counsel did not present an offer of proof or argue that the testimony was admissible. He simply moved to a different line of questioning. N.T., 6/4/24, at 67-68.

Subsequently, counsel for Appellant likewise asked Detective Wittenberger whether the victim "was to meet with somebody by the name of E" on the night of the murder. *Id.* at 137. The Commonwealth objected on the basis of hearsay, and the court sustained the objection. Counsel for

Johnson requested a sidebar conference, but the conference was not transcribed. At the conclusion of the conference, the court again sustained the objection. *Id.* at 138.

> According to Appellant,
>
> If [Detective Wittenberger] was permitted to respond, an assumption can be made that he would have stated that he saw a text from [the victim] that was sent to his girlfriend in which he states that he intended to meet up with an individual named "E". This declaration falls squarely within the exception to the hearsay rule for declarant's state of mind (intent). This was critical information because it would have raised reasonable doubt about who [the victim] met with on March 2nd into March 3rd, especially in a purely circumstantial case.

Appellant's Brief at 13.

Appellant waived this argument. Issues not raised before the trial court are waived and cannot be raised for the first time on appeal. Pa. R.A.P. 302(a). Trial judges "must be given an opportunity to correct errors at the time they are made." *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008). To avoid waiver, "one must object to errors, improprieties or irregularities at the earlies possible state of the criminal… adjudicatory process." *Id.* at 580. The defendant must make a "timely and specific objection" to preserve an issue for review. *Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa. Super. 2003). If the ruling excludes evidence, the moving party must inform the court of the substance of the evidence by an offer of proof, unless the "substance was apparent from the context." Pa.R.E. 103(a)(2). Thus, the defendant may not raise a new theory of relief that he

did not present to the trial court. If counsel states the grounds for an objection, "then all other unspecified grounds are waived and cannot be raised for the first time on appeal." *Commonwealth v. Lopez*, 57 A.3d 74, 81-82 (Pa. Super. 2012).

Here, the trial court sustained the Commonwealth's hearsay objection when Appellant's counsel asked the victim's girlfriend if the victim told her that he was meeting with E. Counsel did not present an offer of proof or argue that the testimony was admissible. The trial court again sustained the Commonwealth's hearsay objection when Appellant's counsel asked Detective Wittenberger a similar question. The court affirmed that it was sustaining the objection after an unrecorded side bar. Counsel again failed to present any argument as to the admissibility of the evidence on the record. Appellant now argues for the first time on appeal that this testimony was admissible to show the victim's intent under the state of mind exception to the hearsay rule. Appellant waived this argument because he did not raise it during trial. *Commonwealth v. Smith*, 47 A.3d 862, 866 (Pa. Super. 2012) ("[i]n order to preserve application of a hearsay exception for appellate review, that specific exception must first be raised before the trial court").

Even if Appellant had preserved this argument, it would not have entitled him to relief, because exclusion of this evidence was at most harmless error.

Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. ***Commonwealth v. Chmiel***, 889 A.2d 501, 521 (Pa. 2005).

Appellant appears to believe that the excluded evidence would have been relevant to demonstrate that he met with another person on the night of the murder instead of Appellant. For present purposes, we will assume that this evidence was admissible and that the court erred by excluding it from trial. Nevertheless, the evidence of record demonstrates that the victim met with Appellant and Johnson on the night of the murder; the three men entered the river trail; the victim's body was found on the trail; Appellant and Johnson exited the trail with Appellant's cellphone; and Appellant and Johnson fled Norristown and took steps to evade apprehension for another month. This evidence proves overwhelmingly that even if Appellant intended to meet with E on the night of the murder, he met instead with Appellant and Johnson, and that Appellant was guilty of murder. Thus, exclusion of the evidence concerning Appellant's intent to meet with E was at most harmless error.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>10/30/2025</u>